COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-03-113-CV
 
JEFF FOX, INDIVIDUALLY                                                       APPELLANT 
AND D/B/A FRESHWATER FISH, INC.
 
V.
 
TROPICAL WAREHOUSES, INC.                                                 APPELLEE 
 
------------
 
FROM 
COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY 
 
------------
 
OPINION
 
------------
Introduction
        This is an interlocutory appeal from the trial court’s grant of a temporary 
injunction. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 
2004). Appellant Jeff Fox, individually and doing business as Freshwater Fish, 
Inc., appeals from the trial court’s order enjoining him and his agents, servants, 
employees, attorneys, and all those acting on his behalf (“representatives”) 
from (1) altering, destroying, or using information contained in a rolodex and 
computer that he removed from appellee Tropical Warehouses, Inc.’s premises 
and (2) selling tropical freshwater fish within Texas to Wal-Mart or Petco. In 
four issues, Fox contends that the trial court abused its discretion in granting 
the temporary injunction because (i) the items Tropical Warehouses, Inc. (TWI) 
seeks to enjoin Fox from using are not trade secrets, (ii) there is no evidence 
Fox used any trade secrets of TWI to gain a competitive advantage over TWI, 
(iii) there is no evidence TWI has suffered any irreparable harm, and (iv) TWI 
has not shown the absence of an adequate remedy at law. We modify the 
temporary injunction and affirm it as modified. 
Factual and Procedural Background
        TWI is a freshwater tropical fish wholesaler. Its owner, Danny Martinez, 
has been in the freshwater tropical fish business for approximately thirty years. 
TWI has been selling fish to Wal-Mart stores since 1978 and to Petco for the 
last 6 or 7 years. As of January 2003, Wal-Mart and Petco comprised over 
99.9 percent of TWI’s business. 
        In 1991, TWI hired Fox as its general manager. As general manager, Fox 
had access to TWI’s financial information, including pricing and sales figures, 
contact information, and details of its operation. Fox was TWI’s sole contact 
with the Petco buyers and had authority to give discounts and special offers to 
Petco without prior approval. Two-thirds of Fox’s income was derived from 
TWI’s sales to Petco. 
        In December 2002, Fox told Martinez that Petco was demanding a ten 
percent discount on fish as a mortality allowance. At Martinez’s direction, Fox 
negotiated a five percent discount with Petco. In mid-January 2003, Martinez 
began an analysis of the Petco account to determine the difference in the prices 
he was charging to Petco and Wal-Mart. Fox supplied Martinez with at least 
some of the pricing information used in the analysis. Martinez and his son 
supplied pricing information for the analysis as well. 
        In February 2003, a day before Martinez completed the analysis, Fox told 
Martinez that Petco had demanded an additional fifteen percent price reduction. 
Based on that information and his completed analysis, which showed that the 
prices TWI was charging Petco were 19 to 23 percent less than the prices it 
was charging Wal-Mart, Martinez decided he could not sell fish to Petco with 
the additional discount. At Martinez’s direction, Fox sent Petco an email stating 
that “Danny/TWI has decided not to match the current offer on the table.” He 
did not show Martinez the email before he sent it. Martinez contends that he 
told Fox he wanted to review any communication with Petco before Fox sent 
it and that his intention was to try to negotiate a more favorable price with 
Petco rather than simply discontinuing business with them. 
        In mid-February, Fox gave his notice of resignation; his last day of work 
was February 27, 2003. He took a rolodex and computer from the office with 
him. Fox had purchased the computer, but he kept it at TWI and used it in 
connection with his work there. The rolodex and computer contained contact 
information for TWI’s customers; the computer also contained purchasing 
information, payroll reports, prices, sales data, vendor and supplier information, 
loss rates, and business history for TWI. 
        On February 21, 2003, Fox incorporated Freshwater Fish, Inc., which 
began selling fish to Petco at the discounted price Petco had demanded from 
TWI. Fox began organizing the business while still employed by TWI. On 
March 17, 2003, TWI filed suit against Fox, individually and doing business as 
Freshwater Fish, Inc., for misappropriation of trade secrets. In its petition, TWI 
requested temporary and permanent injunctive relief. On April 3, 2003, after 
a hearing, the trial court signed an order granting TWI a temporary injunction. 
Standard of Review
        To be entitled to a temporary injunction, the applicant must plead a cause 
of action and show a probable right to recover on that cause of action and a 
probable, imminent, and irreparable injury in the interim. Butnaru v. Ford Motor 
Co., 84 S.W.3d 198, 204 (Tex. 2002). A probable right of recovery is shown 
by alleging a cause of action and presenting evidence tending to sustain it. 
Miller Paper Co. v. Roberts Paper Co., 901 S.W.2d 593, 597 (Tex. 
App.—Amarillo 1995, no writ). An injury is irreparable if damages would not 
adequately compensate the injured party or if they cannot be measured by any 
certain pecuniary standard. Butnaru, 84 S.W.3d at 204; see T-N-T 
Motorsports, Inc. v. Hennessey Motorsports, Inc., 965 S.W.2d 18, 24 (Tex. 
App.—Houston [1st Dist.] 1998, no pet.). 
        The purpose of a temporary injunction is to preserve the status quo until 
a trial on the merits. Butnaru, 84 S.W.3d at 204; Walling v. Metcalfe, 863 
S.W.2d 56, 58 (Tex. 1993). “Status quo is defined as ‘the last, actual, 
peaceable, noncontested status which preceded the pending controversy.’” 
Universal Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 577 (Tex. 
App.—Austin 2000, no pet.) (quoting Transp. Co. v. Robertson Transps., Inc., 
152 Tex. 551, 261 S.W.2d 549, 553-54 (1953)). 
        In an appeal from an order granting or denying a temporary injunction, the 
scope of review is restricted to the validity of the order granting or denying 
relief. Walling, 863 S.W.2d at 58; Thompson, 24 S.W.3d at 576. Whether to 
grant or deny a request for a temporary injunction is within the trial court’s 
discretion, and we will not reverse its decision absent an abuse of discretion. 
Butnaru, 84 S.W.3d at 204; Walling, 863 S.W.2d at 58. Accordingly, when 
reviewing such a decision, we must view the evidence in the light most 
favorable to the trial court’s order, indulging every reasonable inference in its 
favor, and determine whether the order was so arbitrary that it exceeds the 
bounds of reasonable discretion. Thompson, 24 S.W.3d at 576; CRC-Evans 
Pipeline Int’l, Inc. v. Myers, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st 
Dist.] 1996, no writ). A trial court does not abuse its discretion if it bases its 
decision on conflicting evidence and evidence in the record reasonably supports 
the trial court’s decision. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); 
Myers, 927 S.W.2d at 262. 
Trade Secret Protection
        In his first two issues, Fox contends that the information TWI seeks to 
protect does not constitute a trade secret and that there is no evidence he used 
any of the information to gain a competitive advantage over TWI. In her ruling 
from the bench, the trial judge found that TWI’s price lists, sales reports, and 
certain of its business records contained on Fox’s computer, including a yearly 
payroll sales comparison report and several reports specific to Wal-Mart’s stores 
and fish sales, some of which were prepared by Wal-Mart, were entitled to 
trade secret protection until trial. 
        A trade secret is “‘any formula, pattern, device or compilation of 
information which is used in one’s business and presents an opportunity to 
obtain an advantage over competitors who do not know or use it.’” In re Bass, 
113 S.W.3d 735, 739 (Tex. 2003) (quoting Computer Assocs. Int’l, Inc. v. 
Altai, Inc., 918 S.W.2d 453, 455 (Tex. 1996)). The supreme court has 
identified six nonexclusive relevant criteria a court should consider in 
determining whether information is entitled to trade secret protection: (1) the 
extent to which the information is known outside the holder’s business; (2) the 
extent to which it is known by employees and others involved in the holder’s 
business; (3) the extent of the measures taken by the holder to guard the 
secrecy of the information; (4) the value of the information to the holder and 
its competitors; (5) the amount of effort or money expended by the holder in 
developing the information; and (6) the ease or difficulty with which the 
information could be properly acquired or duplicated by others. Id. Information 
generally known and readily available is not protectable, but the fact that 
information is discoverable by lawful means does not deprive its owner of 
protection from one acquiring it by unfair means. Gonzales v. Zamora, 791 
S.W.2d 258, 264-65 (Tex. App.—Corpus Christi 1990, no writ). Even in the 
absence of an enforceable nondisclosure agreement, a former employee may 
not use confidential information or trade secrets the employee learned in the 
course of his employment for his own advantage and to the detriment of his 
employer. Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 551 (Tex.
App.—Dallas 1993, no writ). 
        When deciding whether to grant or deny a request for a temporary 
injunction, the trial court does not decide whether the information sought to be 
protected is a trade secret; rather it determines whether the applicant has 
established that the information is entitled to trade secret protection until a trial 
on the merits. Ctr. for Econ. Justice v. Am. Ins. Ass’n, 39 S.W.3d 337, 343 
(Tex. App.—Austin 2001, no pet.); see T-N-T Motorsports, Inc., 965 S.W.2d 
at 23-24. That an order is issued granting trade secret protection does not 
mean the protected information is a trade secret. Ctr. for Econ. Justice, 39 
S.W.3d at 343. 
        Martinez testified that TWI keeps the prices it charges to Wal-Mart and 
Petco a closely guarded secret. He testified that Fox knows his password for 
accessing Wal-Mart’s store sales information and that Fox could use this 
information to undercut the prices TWI charges to Wal-Mart. He said that the 
Petco invoices that were used in the warehouse did not show the wholesale 
prices TWI charged to Petco. While Fox agreed that the vendors who attend 
trade shows share information about “all aspects of the business,” he admitted 
that they do not share information about pricing. 
        TWI contends that its customer information contained on Fox’s computer 
and rolodex constitutes a compilation of information that is used in TWI’s 
business and that the compilation of the information in usable form is entitled 
to trade secret protection. TWI introduced into evidence exhibit 17, which 
includes a list of Wal-Mart stores that TWI sells to with the store number, 
location, and telephone number for each store and a list of the Petcos TWI was 
servicing through the first part of March 2003 with the phone and fax numbers 
and shipping address for each store. Martinez testified that this information 
cannot be obtained just by looking in the phone book and that having this 
information would enable a person to more easily and readily compete with 
TWI. Martinez also said that this information was on Fox’s computer. 
        Martinez further testified that the TWI employee handbook that was in 
effect when Fox was employed with TWI requires that visitors to TWI’s 
premises sign-in so that access to the facility is controlled. After Fox left TWI, 
Martinez installed a no-visitors sign outside the premises. According to 
Martinez, TWI requires that visitors to the premises be escorted by TWI 
personnel. Several employees had access to TWI’s price information as shown 
on invoices from vendors and invoices to Petco and Wal-Mart. Martinez has 
never had any of these people sign noncompetition or nondisclosure 
agreements. But TWI’s computers, except for Fox’s, are networked, and the 
warehouse employees do not have access to them. Martinez said that the 
financial information is kept private by keeping the computers in locked offices 
after business hours. 
        Martinez testified that TWI’s confidential information is valuable to TWI 
because it is something he has acquired and achieved over a thirty-year period 
and is not “something that [he] would just give out to anybody.” He stated 
that he did not intend for Fox to be able to use the information to compete with 
TWI.
        Fox admitted that the only way he knew Petco was looking to buy fish 
at a cheaper price is because of his employment at TWI, that he would not have 
known about the vendors Freshwater Fish buys from other than through his 
employment at TWI, and that he had no contacts in the business before 
working at TWI. He also admitted that of the approximately 500 freshwater 
tropical fish suppliers in the Tampa, Florida area, Freshwater Fish buys from the 
same 5 or 6 that TWI buys from and that Freshwater Fish buys from the same 
Miami fish importers and the same goldfish suppliers as TWI and that he knew 
about those vendors solely because of his employment with TWI. Freshwater 
Fish employs four other former TWI employees. 
        The evidence shows that Fox has access to and possession of TWI’s 
pricing information, customer lists, sales and payroll data, and other information 
regarding TWI’s relationship with Wal-Mart and Petco. The evidence further 
shows that TWI did not intend to share this information outside of the business, 
that it took steps to limit the number of employees with access to the 
information, and that this type of information is not generally shared within the 
industry. This information is important to TWI’s business because (1) a 
competitor with knowledge of TWI’s prices could use that information to 
undercut the prices TWI charges to Wal-Mart, its largest, and for all practical 
purposes sole, current customer, and (2) TWI cannot update its sales and 
payroll reports without access to the prior versions on Fox’s computer. Thus, 
applying the relevant criteria and the appropriate standard of review, we hold 
that the trial court did not abuse its discretion in determining that TWI’s price 
lists, customer lists, and the information contained in the reports introduced 
into evidence as exhibit 20 are entitled to trade secret protection until trial. See 
T-N-T Motorsports, Inc., 965 S.W.2d at 22 (noting that customer lists, pricing 
information, client information, customer preferences, buyer contacts, and 
market strategies have been shown to be trade secrets); Miller Paper Co., 901 
S.W.2d at 601 (same). 
        Fox contends that even if this information is entitled to trade secret 
protection, TWI has not proven that he is using the information to gain a 
competitive advantage over TWI. However, TWI is not required to prove that 
Fox is actually using the information; it need only prove that he is in possession 
of the information and is in a position to use it. See Rugen, 864 S.W.2d at 
552; see also T-N-T Motorsports, Inc., 965 S.W.2d at 24 (holding that 
appellant possessed confidential information of former employer and was in a 
position to use it; thus, appellant was likely to use information to former 
employer’s detriment). Not only was Fox privy to this information while 
employed with TWI, the evidence shows that he has access to the information 
via the computer and rolodex he removed from TWI’s premises. Accordingly, 
we overrule Fox’s first two issues. 
Probable, Imminent, and Irreparable Injury
        Fox contends that TWI has not shown that it will be irreparably harmed 
by his actions and that even if it has, it has not shown that it has no adequate 
remedy at law. Fox claims that because TWI declined to sell to Petco at the 
discounted prices and because Martinez admitted he would never sell to Petco 
at those prices, then TWI is not being harmed. 
        With respect to Wal-Mart, the evidence shows that Fox and Freshwater 
Fish have possession of and access to confidential information about TWI’s 
sales to Wal-Mart, including the wholesale prices TWI charges to Wal-Mart. 
Martinez testified that with this information, a competitor could set its 
wholesale prices lower than TWI’s and divert all of Wal-Mart’s business away 
from TWI. Martinez also testified that he could not come up with a number 
that would be suitable compensation as damages if this were to occur. Indeed, 
the evidence shows that Wal-Mart and Petco comprised over 99.9 percent of 
TWI’s business; thus, Wal-Mart comprises almost all of TWI’s current business. 
It is a reasonable inference from the evidence that the loss of Wal-Mart as a 
customer would end TWI’s operation and that the damages from such an 
occurrence would be difficult to calculate. Therefore, we hold that the trial 
court did not abuse its discretion in finding that TWI would suffer a probable 
injury if Fox and Freshwater Fish were not enjoined from selling tropical 
freshwater fish to Wal-Marts in Texas until trial. 
        Fox contends that even if the trial court did not abuse its discretion in 
finding that TWI would suffer a probable injury as to Wal-Mart, it did abuse its 
discretion in finding that TWI would suffer a probable injury as to Petco. Fox 
asks that as an alternative to reversing the trial court’s decision, we modify the 
temporary injunction to remove the restraint against selling tropical freshwater 
fish to Petco stores in Texas. See T-N-T Motorsports, Inc., 965 S.W.2d at 25 
(holding that appellate court may modify a temporary injunction that is overly 
broad).
        The evidence shows that Fox also has access to and possession of 
confidential information regarding TWI’s sales to Petco, including the wholesale 
prices TWI charged to Petco and the discounts Petco requested. Martinez 
testified that with this information, Fox and Freshwater Fish could sell fish to 
Petco cheaper than TWI sells fish to Wal-Mart, and Petco could set its retail 
prices lower than Wal-Mart’s. Martinez stated that he would lose money if 
Petco was able to sell fish cheaper than Wal-Mart. He also testified that there 
are locations in which Petco and Wal-Mart are in direct competition in the same 
city.
        In contrast to the consequences to TWI if Freshwater Fish were to use 
TWI’s confidential information to sell fish to Wal-Mart cheaper than TWI, the 
evidence shows that the consequences to TWI if Freshwater Fish continues to 
sell to Petco are much more speculative. Martinez testified that he would lose 
money if Petco were able to sell fish to the public cheaper than Wal-Mart. 
However, there is no evidence in the record about what cities Wal-Mart and 
Petco compete in, whether TWI and Freshwater Fish sold to both stores in 
those markets, or the current retail prices both stores charged in those markets. 
In addition, the evidence shows that while Fox was employed with TWI, TWI 
sold fish to Petco at a lower price than it sold fish to Wal-Mart. There is no 
evidence as to whether TWI’s sales to Wal-Mart were harmed as a result. 
        Furthermore, Martinez testified that he still would not give Petco the 
discount it asked for and that he would not give it “any better deal” than he 
had previously. The record shows that Petco based its prices on the prices 
charged by Segrest Farms, another supplier, and that Petco would not do 
business with any company that did not match Segrest Farms’ prices. There 
is no evidence that TWI would be harmed by Freshwater Fish selling fish to 
Petco at the discounted prices that TWI chose not to accept and would not 
currently accept and that another supplier would accept. 
        An injunction is not proper when the claimed injury is merely speculative; 
fear and apprehension of injury are not sufficient to support a temporary 
injunction. Jordan v. Landry’s Seafood Rest., Inc., 89 S.W.3d 737, 742 (Tex. 
App.—Houston [1st Dist.] 2002, pet. denied) (op. on reh'g). Because TWI’s 
evidence of injury with respect to Freshwater Fish’s sales to Petco is merely 
speculative, we hold that the trial court abused its discretion in finding that TWI 
would suffer a probable, imminent, irreparable injury if Fox and Freshwater Fish 
were not temporarily enjoined from selling tropical freshwater fish to Petco in 
Texas. We sustain Fox’s third and fourth issues as to Petco, but not as to the 
remainder of the temporary injunction. 
Conclusion
        Because there is no evidence that TWI will suffer a probable, imminent, 
and irreparable injury if Fox, Freshwater Fish, and their representatives are not 
temporarily enjoined from selling tropical freshwater fish to Petco in the State 
of Texas, we modify paragraphs number one and two of the temporary 
injunction to enjoin Fox, Freshwater Fish, and their representatives from: 
1.Altering, destroying, or using information contained in the
rolodex or computer equipment removed from Tropical
Warehouses, Inc.’s premises, except that Jeff Fox,
individually and doing business as Freshwater Fish, Inc., his
agents, servants, employees, attorneys, and all those acting
on his behalf, whether alone or in any combination with him
or others, directly or indirectly, may use the information to
the extent that Freshwater Fish, Inc.’s sales to Petco were
based on that information; and
 
2.Selling freshwater tropical fish within the State of Texas to 
Wal-Mart.

We affirm the temporary injunction as modified.

                                                                  TERRIE LIVINGSTON 
                                                                  JUSTICE
 
PANEL B: LIVINGSTON, DAUPHINOT, AND HOLMAN, JJ.
 
DELIVERED: November 20, 2003